Littdeford, J.
The petitioner, J. IT. Schoepf, by his petition in habeas corpus, seeks to be discharged from a commitment made by a notary public before whom his deposition was being taken in an action brought by Josephine Pace against the Cincinnati Traction Company, for injuries to the woman, alleged to be the result of an accident on the line of the traction company.
The notary public ordered the arrest of Mr. Schoepf because of his refusal to answer certain questions, and also because of his refusal to produce certain reports of the accident made by the conductor and motorman of the ear.
The following are the questions that Mr. Schoepf refused to answer:.
“Q. On the 17th day of May, 1902, a woman fell or was thrown off a car belonging to the Cincinnati Traction Company, at or near the corner of Oak and Belmont streets, College Hill. Who was the conductor in charge of this carf”
*94 “ Q. Do you know the name of this conductor ? ’ ’
“Q. Do you know the name of the motorman of this car?”
“Q. Were there any other persons on this car besides the plaintiff, the conductor and the motorman?”
“Q. Were there any persons, that you know of, besides the plaintiff, the conductor and the motorman, .present at the time of the accident, and who witnessed it ? ”
“Q. Who was the division superintendent, in May, 1902, of the division to which the College Iiill and Main line belonged ? ’ ’
There is no claim that Mr. Schoepf was present at the time of this accident, and it is conceded that all of these questions but the last one call for hearsay testimony.
The language of Shauck, J., in deciding Ex parte Jennings, 60 O. S., 319, indicates that the Supreme Court of this state does not intend to clothe notaries with the power to compel witnesses to give testimony which the rules of evidence exclude from' consideration in a court of justice. For this reason it is the opinion of this court that Mr. Schoepf had the right to refuse to answer the questions referred to.
As to the last question quoted above, inquiring as to the name of the division superintendent in May, 1902, it is the opinion of the court that Mr. Schoepf ought to answer this question. He does not deny that he knows the name of this official. It may be that the name of the division superintendent is an irrelevant matter, but the trial court can better determine that. No harm can result to the defendant from disclosing the names of its officials, and it may conduce to justice being done.
“The exclusion of evidence is generally an evil, and the admission of evidence is generally sáfe and wise” (Bell v. Brewster, 44 O. S., 690, 699).
The next point to be taken up is whether or not the witness is bound to produce the reports in his possession made by the conductor and motorman concerning the accident which was the cause of this suit. It is claimed that the notary has the right to compel the production of these reports under Section 5247. This section- is as follows:
“Section 5247. The subpoena shall be directed to a person therein named, requiring him to attend at a particular time and *95 place, to testify' as a witness; and it may contain a clause directing the witness to bring with him any books, writing, or other-thing under his control, which he'may be compelled to produce as evidence. ’ ’ ■
Mr. Schoepf testifies that he is claim agent of the company, and that all accidents on the lines of the defendant company must be reported to him by both motorman and conductor, together with the cause thereof. He says this is by order of “the elective officers of the traction company.”
If any part of the car gets into a dangerous condition, it is reported to the barn foreman; and daily reports of the condition, of every car are made when it is turned in. Accidents only are reported to Mr. Schoepf.
The witness says these reports are made “to advise us of the cause of the trouble,” and also-for use by the attorneys of the company if suit is brought He says that a report would have to be made of a collision between two cars even if no one was on the cars except the motorman and conductor, and there was no injury done except to the cars.
It appears, therefore, that those documents are not gotten up as part of the preparation of a case for court, but are reports made by the company’s agents in all cases of accidents, according to a rule of the company, to advise it of the cause of the trouble without regard to whether or not there is any possibility of a suit. If a suit is brought, Mr. Schoepf says they are turned over to the lawyers of the company for their use.
Counsel for petitioner objects to the production of these reports on the ground that they are privileged communications. In support of this view several cases are cited.
One of those cases is Collins v. London Omnibus Company, 68 L. T. R, 831, in which case the learned court refused to allow the plaintiff in an action for negligence to inspect the report of the accident made by the omnibus driver, holding that it was a privileged communication, and saying “there was abundance in the present case to indicate that the document-came into existence for no purpose other than the use of the solicitor in anticipation of this action,” etc. The text of the two opinion's in the case by Willis, J., and Charles, J., show that in the minds of both learned judges- the refusal to order the production of the *96 report was based on tbe fact that it had been prepared solely for the use of the solicitor to assist him in a prospective suit.
Two of the other cases cited for petitioner, Southwark, etc., v. Quick, 38 L. T. R., 28, and Cossey v. London Company, L. R., 5 C. P., 146, take the same view. The last case cited, London Compomy v. Kirk and Randall, 51 L. T. R., 599, does not throw any light on the matter one way or the other.
Even upon the authority of the cases cited for the petitioner, therefore, the reports for which Mr. Schoepf is asked here are not privileged.
Of the English cases cited on the other side, the leading one is Woolley v. North London Railway Company, L. R., 4 C. P., 602 (1869). It is the first case deciding the question before us, was concurred in by all the members of the bench, and has never been overruled. The decision holding that reports like those here are not privileged and must be produced, was based on the ground that the reports would be made whether there was any cause of action or not, as is said by Smith, J., at page 612. No less an authority than Taylor on Evidence (3d volume, 1186) has relied upon this case to assert that “in an action against a railway company for injuries sustained on their railway, plaintiff may inspect reports descriptive of the accident made in the ordinary discharge of duty by different servants of the company to their general manager,” etc.
This leading case was followed by Parr v. Railway Company, 24 L. T. N. S., 558; Skinner v. Great Northern Railway, L. R., 9 Ex., 298, and Cook v. North Metropolitan Tramway Company, 54 J. P., 263. The cases cited by defendant’s counsel which are referred to above either follow it or at least do not dissent from it.
Coming to the American cases, although a great array of citations has been industriously collected by counsel on both sides, all of which 'have been carefully commented on .in arguments and briefs by the learned counsel, there is not one ease on either side which is even claimed to be just the same sort as the case in hand, and all of those cited as analogous can be distinguished in some way from the case at bar, as has been ably pointed out by counsel in the case.
*97 On the authority of the English cases, therefore, which are well considered and apparently exactly in point, the court is of the opinion that these reports ought to be produced by Mr. Schoepf.
But aside from the English cases, there is good reason why the reports ought to be produced.
It is held in the case of Rauh, 65 O. S., 128, that—
“A subpoena issued by a notary public for a witness to attend and testify in a deposition before the notary public may contain a clause directing the witness to bring with him any book, writing or other thing under his control which he may be compelled to produce as evidence,” etc.
This clause “which he may be compelled to produce as evidence,” means which he may be compelled to produce as evidence in court at the trial.
Mr. Schoepf could be required by the plaintiff to appear in court and produce these reports there for use by the plaintiff in the cross-examination of the conductor and motorman: and the reports could become evidence in the ease under the following circumstances: If either the conductor or motorman were to make statements upon the stand not consistent with those made in his written report to Mr. Schoepf, the report- could be put in evidence by the plaintiff after the witness had admitted that he wrote it. Chase’s Stephen’s Digest of Evidence, Article 132, Am. Note 1.
Counsel for petitioner contends that the only documents which a notary may require a witness to produce are such as a court may require a party to produce for the inspection of the opposite party under Revised Statutes, Section 5290. This section provides that a party is entitled to inspection and copy of books and documents when they contain evidence relating to “the merits of the action or defense.”
There is nothing in the language of the court in deciding the ease of Rauh, supra, to justify the conclusion that the words “which he may be compelled to produce as evidence” mean such as he may be compelled to produce for inspection under Revised Statutes, Section 5290; nor is there any reason apparent to this court why that court should have so meant. But conceding *98 for -the sake of argument that a notary can only require the production of written evidence relating to the “merits of the action or defense,” it is the opinion of this court that these reports are that sort of evidence.
Geo. P. Stimson and KiMredge & Wilby, for petitioner.
Oliver S. Bryant, Jos. Cox, Jr., and Chas. B. Wilby, contra.
It is quite true that they may never be used at the trial, but if this were an objection it might be interposed to the taking of any evidence in the form of depositions. If under the circumstances spoken of above the reports are put in evidence at the trial by’the plaintiff, they will be evidence relating to the merits of the action, for they will help to throw light upon how the accident happened.
Counsel for petitioner admits that the production of these reports could be enforced in court by the plaintiff in the action and that they might be put in under the circumstances referred to; but he contends that they could be considered by the jury solely for the purpose of determining the credibility of 'the man who wrote the report.
With this contention the court can not. agree. No human being could read one of these reports if it once got in without taking it as evidence of the way in which the accident happened, as well as evidence bearing upon the credibility of the witness. It would be folly to instruct a jury to consider it’ for the latter purpose only. They could not shut their eyes to its probative effect as bearing upon the question of the mishap. No authority has been cited by the learned counsel for the petitioner to support this theory of his, and it seems to the court to be unsound.
No opinion is expressed by the court as to whether or not the documents in question here ought to be produced under Revised Statutes, Section 5289, according to “the ordinary rules of proceedings in chancery.”
The order of the court, therefore, will be that the question as to whom the division superintendent was, must be answered, and that the reports must be produced.
An entry may be drawn in accordance with the foregoing decision and the costs taxed against the petitioner.